**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MELINDA ANN CRUZ, | ) | CASE NO. 1:23-CV-00245-CEH |
| | ) | |
| Plaintiff, | ) | CARMEN E. HENDERSON |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION & |
| COMMISSIONER OF SOCIAL SECURITY, | ) | ORDER |
| | ) | |
| Defendant, | ) | |
| | ) | |

## I. Introduction

Plaintiff, Melinda Ann Cruz ("Cruz" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 8). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding and DISMISSES Plaintiff's Complaint.

## II. Procedural History

On April 10, 2018, Claimant filed an application for SSI, alleging disability beginning April 10, 2018. (ECF No. 7, PageID #:45). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On July 10, 2019, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.*). On July 24, 2019, the ALJ issued a written decision finding Claimant was not disabled. (*Id.* at PageID #:45-57). The ALJ's decision became final on June 29, 2020, when the Appeals Council declined further review. (*Id.* at PageID #: 30).

Claimant appealed the denial to the United States District Court for the Northern District of Ohio and, on May 3, 2021, based on the parties' stipulation, the case was remanded to the Commissioner for further proceedings. (*Id.* at PageID #: 880).

On December 14, 2021, Claimant filed an application for DIB. (*Id.* at PageID #: 730). Because the remand dealt with the SSI application, the DIB "application was escalated to the hearing level since it deals with the same issues." (*Id.*). On August 24, 2022, the same ALJ held a hearing, during which Claimant, again represented by counsel, and an impartial vocational expert testified. (*Id.*). On October 11, 2022, the ALJ again issued a written decision finding Claimant was not disabled. (*Id.* at PageID #: 730-47).

On February 8, 2023, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 9, 13, 14). Claimant asserts the following assignments of error:

> (1) The ALJ failed to evaluate the consistency and supportability of the medical opinions pursuant to the requirement of 20 CFR 404.1520(c) and 416.920(c).

> (2) The RFC did not accurately portray Ms. Cruz as it failed to take into consideration her inability to sustain competitive employment eight hours a day, five days a week, ongoingly, due to interruptions from her psychological based symptoms.

(ECF No. 9 at 3).

## III. Background[1]

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> Claimant testified anxiety, depression and fibromyalgia are the most serious health problems. Claimant is taking medication for anxiety and depression. They help to a certain extent. The claimant has had trouble in the past with coworkers. Claimant testified depression reduces the ability to focus. Claimant has panic attacks.

---

[1] Because Claimant challenges the ALJ's decision only with respect to her mental impairments, the Court sets forth only the background related to those impairments.

. . .

Claimant has a live in-aide. The aide helps with chores and keeps track of claimant's medication. Claimant has a personal relationship with the aide. When asked what qualified this person to be an aide, claimant said there is a letter stating someone helps at all times.

Claimant works Sunday through Thursday, starting at 10pm. Claimant is attending school online.

(ECF No. 7 at PageID #:736).

## B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

In regards to the claimant's mental impairments, the evidence shows that the claimant has a history of depression, anxiety, and panic disorder (Exhibit B2F; B3F; B6F; B10F; B18F; B20F). Review of the record indicates that the claimant was taking Adderall for ADHD (Exhibit B7F/13). Treatment notes from January 2018, show that the claimant was using medication, mantra, supports, and reaching out to manage her symptoms (Exhibit B2F/23). Mental status examination notes show that the claimant had a depressed affect but fair judgment, intact memory and attention span, and no suicidal ideation (Exhibit B2F/23). A PHQ9 questionnaire showed moderately severe depression symptoms (Exhibit B2F/24). Her physician noted that her medications were appropriate for her symptom relief and recommended that she continue seeking psychiatry treatment (Exhibit B2F/25). In February 2018, the claimant's depression and anxiety was stable on her medication regime (Exhibit B2F/16).

Evidence from April 2018 shows that the claimant sought treatment with a therapist (Exhibit B3F/10, 13). She complained of unexpected, sudden, and debilitating panic symptoms, such as shallow breathing, sweating, heart racing, trembling and chest tightness (Exhibit B3F/10, 13). Treatment notes show that the claimant demonstrated marked fear and avoidance of bodily sensations associated with a panic attack and marked avoidances of activities that may bring on a panic attack (Exhibit B3F/10, 13). She was prescribed Buspirone, Trazodone, and Zoloft and recommended biweekly counselling (Exhibit B3F/16). Follow-up notes show that the claimant's anxiety was controlled with medication and she was not having any panic attacks (Exhibit B3F/6). She was sleeping better and eating well (Exhibit B3F/6). The claimant's Buspirone, Trazodone, and Zoloft medications were re-prescribed and she was recommended to continue seeking therapy (Exhibit B3F/6).

In June, the claimant reported that her medication was working to help manage her symptoms but she continued to have some anxiety symptoms during the day

(Exhibit B6F/30). The claimant discussed her fears of other people judging her and feeling lonely living alone (Exhibit B6F/28, 30). The claimant's Buspirone and Trazodone prescriptions were increased in order to better manage her symptoms (Exhibit B6F/30). Treatment notes show that the claimant was cooperative and engaged, and was using her dog to help manage her anxiety symptoms (Exhibit B6F/29). By the end of June, the claimant had stopped taking her medications because she did not like how she felt (Exhibit B6F/25). Her therapist prescribed her Wellbutrin XL and Prazosin in place of Buspirone and Trazodone (Exhibit B6F/26). A few weeks later, the claimant reported that there was some improvement in some symptoms on her new medication but she felt like they overall were ineffective (Exhibit B6F/21). The claimant's medications were again adjusted with the addition of Trintellix (Exhibit B6F/22). A week later, the claimant reported that on Trintellix, her mood had improved slightly (Exhibit B6F/17). She had not had a panic attack in two weeks and her sleeping had improved (Exhibit B6F/17).

In August, the claimant reported that she was having bad dreams once or twice a week, had catastrophic thoughts about her boyfriend, and had crying spells (Exhibit B6F/15). She also stated that her depression had improved and she was eating well (Exhibit B6F/11). Despite these reported symptoms, her therapist indicated that the claimant had made some progress at improving her mood (Exhibit B6F/15). Towards the end of August, the claimant reported only mild depression and occasional anxiety (Exhibit B6F/6). She indicated that her Trintellix medication was effective at managing her mood (Exhibit B6F/6). Her psychiatrist increased her Trintellix dosage and began weaning her off Zoloft (Exhibit B6F/6). The following month, the claimant reported that her depression and panic increased with the Trintellix adjustment (Exhibit B10F/70). The claimant's medications were again adjusted, with the cessation of Trintellix and prescription of Rexulti (Exhibit B10F72). Two weeks later, the claimant reported a slight improvement of depression and no panic attacks (Exhibit B10F/66). She indicated that she was only experiencing anxiety when she needed to "talk to people" (Exhibit B10F/66). The claimant's medications were again adjusted to try to best resolve her anxiety (Exhibit B10F/66).

In October, the claimant stated that she was experiencing anxiety when she first woke up in the morning, prior to her taking her medication (Exhibit B10F/62). Treatment notes detail brighter affect and the claimant being more talkative (Exhibit B10F/62). By late October, the claimant described her depression as occasional and only mild and improvement with her anxiety (Exhibit B10F/54). However, she indicated that her medications were making her tired, so her psychiatrist adjusted her medications so she was taking them at night (Exhibit B10F/54). Evidence from late November, early December shows that the claimant's depression and anxiety had improved and she was sleeping better (Exhibit B10F/45). She described her depression as coming and going, lasting for only a few hours at a time (Exhibit B10F/40).

On January 1, 2019, the claimant sought emergency treatment for nausea, vomiting, and having collapsed on the floor (Exhibit B8F/1). Emergency room records indicate that the claimant was having difficulty breathing and she had no actual syncope (Exhibit B8F/1). After an examination that showed no physical causes for her symptoms, she was diagnosed with hyperventilating with a panic attack (Exhibit B8F/1-6). She was discharged with instructions to follow-up with her physician (Exhibit B8F/6). Follow-up notes with her psychiatrist show that the claimant reported crying a lot and feeling sad (Exhibit B10F/35). After her medications were adjusted, she rated her depression as only occasional and mild in nature (Exhibit B10F/30). She was working on resumes for jobs and taking a class at a community college (Exhibit B10F/30). Three months later, the claimant returned to treatment complaining of increased panic attacks (Exhibit B10F/25). She indicated that she still felt anxious out in public and still had some feelings of depression, but not as bad as they were (Exhibit B10F/25). She was prescribed Effexor in exchange for her Zoloft and recommended to follow up in 3 weeks (Exhibit B10F/25). Followup notes show that the claimant's panic decreased and her depression was minimal (Exhibit B10F/20). She stated that her depression comes in waves, but only lasts last than an hour (Exhibit B10F/20). The claimant was working part time and had just received a promotion (Exhibit B10F/20).

In May, the claimant reported that she stopped taking one of her medications and her panic attacks returned (Exhibit B10F/16). She was recommended to continue taking all her medications at the prescribed dosages and to follow-up in two weeks to see if her symptoms were back under control (Exhibit B10F/16). Treatment notes from the following session show that her anxiety and depression had improved but she continued to have panic attacks (Exhibit B10F/12). In June 2019, the claimant continued to complain of panic attacks. Depression was slightly improved. Effexor was increased to 150mg; all other meds were unchanged (Exhibit B10F/3, 7; B18F/144-148). Claimant retuned on July 9, 2019, and reported feeling more depressed and anxious. Claimant was worried about a social security hearing the following week (Exhibit B18F/139). Claimant saw physician assistant Fiebelkorn on August 9, 2019. Claimant reported anxiety had improved since starting Gabapentin. Depression was occasional (Exhibit B18F/127)

Claimant was admitted to the mental health crisis unit at Nord on December 23, 2019, due to passive suicidal thoughts (Exhibit B20F/26). Claimant had been off medication since August 2019. Claimant had also been fired from a job two weeks previously (Exhibit B20F/30). Claimant was started on Ability and Trazodone by Robin Krause, CNP, CNP, CNS (Exhibit B20F/31).

Claimant presented to the Nord Center for a mental health assessment on December 26, 2019. Claimant reported mental health symptoms since childhood. Claimant's pediatrician diagnosed ADHD and prescribed Adderall, but claimant felt very sluggish on Adderall. Claimant reported neglect and abuse by her biological mother and some of the mother's boyfriends. Claimant had last been in mental health treatment at the Charak Center in September 2019, but discontinued treatment due

to insurance issues. Claimant reported no hospitalizations for psychiatric reasons. Claimant had recently been admitted to Nord CRU. Claimant described symptoms of depression and anxiety, including panic attacks. Claimant was adequately groomed with weather appropriate attire. Claimant was oriented to person, place, time and circumstances. Claimant's thought process was logical and goal directed. Claimant showed an anxious mood with full affect. Judgment and insight into present issues were fair. Claimant met the DSM criteria for panic disorder, generalized anxiety disorder and major depression. Claimant was referred for counseling and medication management. Claimant declined referral for day treatment (Exhibit B20F/10-12).

Claimant presented to the emergency room at Mercy Hospital on February 2, 2020, saying she took too much medication that morning. Her job was cleaning the pool at Oberlin. Claimant had been transferred to Mercy. Claimant was hospitalized from February 2, 2020, through February 7, 2020, for severe depression without psychotic features. Claimant initially presented to er from Mercy Allen. Claimant said she had panic attack that morning, took extra Trazodone and fell asleep in an attempt to kill herself. The claimant texted her boyfriend and he came over. Claimant reported taking meds as prescribed. Claimant lives alone, works and go to school (Exhibit B13F/347, 357-362). At a visit on February 21, 2020, claimant felt others were ignoring her. Claimant was started on fluvoxamine and lithium carbonate (Exhibit B20F/37- 39). Claimant presented on March 13, 2020, asking for Klonopin. Claimant stopped Luvox due to feeling tired and sluggish. Lithium was increased to 300 mg (Exhibit B20F/40-42).

Claimant went to the emergency department at Mercy Allen on April 1, 2020, for anxiety. Lithium levels were significantly subtherapeutic (Exhibit B13F/256). On April 6, 2020, claimant reported anxious and depressed mood. Lithium was continued and claimant was stared on Cymbalta (Exhibit B20F/44-46). On May 11, 2020, claimant reported a lack of body sensation since starting Cymbalta. Claimant complained of insomnia with Lithium. Cymbalta was stopped and claimant was to wean off lithium. Claimant was started on Seroquel (Exhibit B20F/48-50). Claimant returned on May 18, 2020, and reported feeling "mean" with blurred vision on Seroquel. Seroquel was discontinued and claimant was to follow up with Dr. Regis (who treated claimant for fibromyalgia pain) for a trial of Gabapentin (Exhibit B20F/51-52).

On June 8, 2020, claimant was insistent that she needs the medication she is given in the emergency room for panic attacks or mood swings. Claimant insisted on receiving controlled substances for anxiety. Nurse Krause noted it had been reviewed with claimant on each appointment that these treatments are not indicated for ongoing prescription and are high addictive. Claimant had been on trials of multiple medications and each time the claimant complained of severe side effects or said the medications did not help. Nurse Krause opined that claimant is drug seeking. Nurse Krause referred the claimant to Mercy Hospital to be assessed for possible ECT for treatment resistant symptoms of depression and anxiety (Exhibit

B20F/54). Claimant only wants controlled substances (Exhibit B13F/231).

Claimant returned to Nord Center on February 15, 2021, and was evaluated by Roseline Okon, MD. Claimant had not been to medication management appointments since June 2020 and was not taking any psychotropic medications. Claimant said only Klonopin helped in the past. Dr. Okon started the claimant on Prozac. Dr. Okon recommended buspirone for anxiety, but claimant declined this medication (Exhibit B20F/57-58). Claimant returned on March 15, 2021. The claimant had only taken Prozac for two weeks and stopped because it made claimant angry. Dr. Okon started the claimant on Latuda 40 mg (Exhibit B20F/60-61).

Records from the Nord Center generally note logical thought process (Exhibit B20F).

Claimant went to the emergency department on March 16, 2021, for an increase in depression. Claimant denied suicide intent or plan. Claimant was not taking any medications at this time and had not taken mental health meds for two months. Claimant blacked out Sunday and did not remember what happened. Claimant's parent said Nord stopped giving claimant meds because did not think they were helping her. Claimant was hospitalized from March 16, 2021, through March 22, 2021 (Exhibit B13F/179). Follow up notes on March 22, 2021, noted claimant's hospitalization. Claimant may return to work March 28, 2021, with no restrictions (Exhibit B13F/950).

Claimant returned to the Charak Center for Health and Wellness on March 25, 2021, for an interactive audio evaluation by Michael Anikeev, MD. Claimant reported taking only Vistaril and Melatonin, with little to no help. Claimant reported several hospitalizations and treatment with psychotropic medications (Exhibit B18F/114). Claimant was well groomed with depressed and anxious mood. Claimant's affect was flat. No delusions were reported. Thought process was circumstantial. Attention and concentration were normal. Reasoning ability was intact. Insight and judgment were fair (Exhibit B18F/120). Dr. Anikeev started the claimant on a trial of alprazolam for panic disorder with agoraphobia, Prazosin for nightmares. Lamictal would be discussed later as a mood stabilizer (Exhibit B18F/125). Claimant reported less nightmares and improved sleep on Prazosin on April 1, 2021 (Exhibit B18F/110). On April 15, 2021, it was noted claimant was stabilizing on medication (Exhibit B18F/106). However, claimant reported on April 30, 2021, that mental health symptoms had not resolved (Exhibit B18F/103). Claimant was prescribed Xanax for one week (Exhibit B18F/105). Claimant was started on Lamictal on May 17, 2021 (Exhibit B18F/102). Claimant was stable on June 1, 2021. Claimant did not feel safe and was lonely. Claimant wanted a live in aide so claimant would not be lonely anymore (Exhibit B18F/93). Nortriptyline was increased to target depression. Claimant had treatment resistant depression (Exhibit B18F/97). Claimant had obtained a live in aide by June 11, 2021 and felt safer and no longer so alone. Claimant feared leaving her house and was calling off work

7

(Exhibit B18F/88). Lamictal was increased to 50 mg (Exhibit B18F/92).

On July 16, 2021, claimant reported side effects since the increase in Lamictal and Nortriptyline (Exhibit B18F/75). Kimberly Cromer, NP, noted claimant had been on multiple medications and was treatment resistant with an underlying personality component. Claimant would be recommended for Spravato. Claimant was to continue Nortriptyline, Prazosin and Xanax. Claimant was to come in and provide a urine sample (Exhibit B18F/79).

On January 12, 2022, claimant stopped taking her medications. Claimant was pregnant and had financial constraints (Exhibit B18F/26). Claimant did not want to continue medication and was willing to try TMS (Exhibit B18F/31). On February 17, 2022, claimant reported that TMS was not approved by insurance. Claimant was not on any medication (Exhibit B18F/20). Latuda was restarted (Exhibit B18F/25). On April 20, 2022, claimant reported induction was scheduled for the next day. Claimant had stopped Latuda because it was not helping (Exhibit B18F/8). Claimant was objectively stable throughout the pregnancy, but subjectively reported significant depression and anxiety (Exhibit B18F/12). Claimant's affect was brighter on May 12, 2022, after the child was born. Claimant was much improved after starting back on medication (Exhibit B18F/1).

Thomas Evans, PhD, evaluated the claimant at the request of the State agency on May 26, 2022. Claimant drove herself to the evaluation. Claimant was living in Oberlin Ohio with her one-month old daughter and a live-in aide. Claimant is currently attending LCC on a part time basis and is studying fire science. Claimant reported finding it difficult to be around large groups of people due to anxiety. Claimant did not report any difficulty taking directives from supervisors or getting along with coworkers. Claimant denied alcohol or illegal drug use. Claimant was in mental health counseling a few years ago. Claimant's current medications included nortriptyline, Alprazolarn and Prazosin. Claimant reported consistent depression and anxiety since claimant was little. Claimant denied current suicidal ideation or intent. Claimant reported being anxious on a daily basis for the past two months. Claimant was anxious at home and in public. Claimant is able to go to the grocery store, movies and restaurants alone, but stated, "I try not to." No signs or anxiety were observed during the evaluation. There was no evidence of psychosis. Claimant denied auditory and visual hallucinations. Dr. Evans diagnosed unspecified anxiety disorder and unspecified depressive disorder (Exhibit B19F).

Claimant presented to the emergency department at Mercy-Allen Hospital on September 2, 2022. Claimant had suicidal ideation after a verbal altercation with partner's family. Claimant jumped out of a moving car at 20 mph because claimant was overwhelmed and wanted to "end it all". Claimant was 11 weeks pregnant with her second child. Claimant was transferred to Mercy Health (Exhibit B21F/2; B22F/1). All imaging was negative and labs were remarkable. Claimant was admitted to behavioral health (Exhibit B21F/7). Although claimant initially reported suicidal ideation, the claimant later denied suicidal ideation (Exhibit

B21F/10). Claimant was treated and released on September 7, 2022, after mental status improved (Exhibit B21F/22). Claimant was not started on medication or ECT due to pregnancy status. Claimant participated in group and other milieu therapy (Exhibit B21F/27-28).

Records from the Charak Center for June 2022 through September 2022 were submitted on September 26, 2022. These records generally shows claimant's mental functioning was stable. Claimant struggled with depression and anxiety, but she was attending to activities of daily living, attending to her child and managing home life.

Claimant followed up via audio at the Charak Center on September 12, 2022. Claimant was 12 weeks pregnant and was fairly sable on current medication. Claimant reported she was doing OK (Case Documents submitted September 26, 2022).

(ECF No. 7 at PageID #: 738-43).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2025.

2. The claimant has not engaged in substantial gainful activity since July 1, 2017, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: dysfunction of major joints, sprains and strains, asthma, other disorders of the skin and subcutaneous tissues, systemic lupus erythematosus, depressive disorder, anxiety disorder, and attention deficit hyperactivity disorder (ADHD) (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567 and 416.967 except claimant can frequently climb ramps or stairs; frequently climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, or crawl; frequently reach overhead bilaterally; must avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation; can understand, remember, and carry out simple instructions in a routine work setting; can respond appropriately to supervisors, coworkers, and work situations if the tasks performed

are goal-oriented, but not at a production rate pace, and the work does not require more than superficial interaction, meaning that it does not require negotiating with, instructing, persuading, or directing the work of others.

. . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(ECF No. 7 at PageID #: 733-36, 746-47

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be

affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

However, even when there is substantial evidence, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). Similarly, an ALJ's decision cannot be upheld, "even if there 'is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'" *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-46 (6th Cir. 2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision).

## B.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20

C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises two issues on appeal, arguing that (1) the ALJ failed to evaluate the consistency and supportability of the medical opinions as required by the regulations and (2) the RFC did not accurately portray her as it failed to consider her inability to sustain competitive employment due to interruptions from her psychological based symptoms. (ECF No. 9 at 3).

### 1. The ALJ properly considered the medical opinions.

Claimant argues she "is entitled to judicial relief because the ALJ failed to evaluate the medical opinions as required by law." (ECF No. 9 at 12). Claimant challenges the ALJ's treatment of opinions from Fabrizia Fiebelkorn, Kimberley Cromer, and the State agency psychiatric medical consultants.

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 416.920(e). For claims filed after March 27, 2017, the regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. *Id.*

Medical source opinions are evaluated using the factors listed in § 416.920c(c). The factors include supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." *Id.* at § 416.920c(c). The ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. *Id.* at § 416.920c(b)(2). Under the regulations, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be" and ""[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c). Additionally, the decision must still build an accurate and logical bridge between the evidence and the conclusion. *Fleischer*, 774 F. Supp. 2d at 877.

### a. Fabrizia Fiebelkorn

The ALJ summarized Fiebelkorn's opinion and his treatment of it:

> The undersigned is less than persuaded by the opinion of Fabrizia Fiebelkorn, PA-C (Exhibit B11F). On July 9, 2019, physician's assistant Fiebelkorn opined that the claimant's social anxiety may prevent her from interacting appropriately with the public. Claimant would likely be absent 4 or more days from work each month, Panic attacks, depression and anxiety may prevent her from dealing with stress (Exhibit B11F). Physician's assistant Fiebelkorn also opined that the claimant had fair to very good abilities to make occupational adjustments but had only fair abilities to handle more than unskilled work (Exhibit B11F). Claimant saw physician's assistant Fiebelkorn on July 9, 2019. Claimant reported feeling more depressed and anxious. Claimant was worried about a social security hearing the following week Claimant denied mood swings, but reported occasional racing thoughts and anxiety. Claimant reported two panic attacks in the last week with no triggers. Claimant reported difficulty falling asleep, but not staying asleep. Claimant had 2 nightmares in the last 2 weeks. (Exhibit B18F/139-143). At a follow

up appointment on July 23, 2019, claimant still reported depression and anxiety. (Exhibit B18F/133) Claimant saw claimant physician assistant Fiebelkorn on August 9, 2019. Claimant reported anxiety had improved since starting Gabapentin. Depression was occasional (Exhibit B18F/127). This appears to be the last visit to the Charak Center in 2019. The next visit to the Charak Center occurred on March 25, 2021 (Exhibit B18F/126). Treating notes from the Charak Center generally show claimant was oriented to person, place, time and situation. Memory, attention and concentration were normal. Reasoning ability was intact. Insight and judgment were either fair or good (Exhibit B18F/9, 41, 47, 52-53, 70, 83, 100, 120, 129, 135). These notes are inconsistent with the marked limitations assessed. The undersigned is less than persuaded by this opinion, as there is nothing in the evidence to suggest that the claimant would likely be absent from work 4 or more days of work each month.

(ECF No. 7 at PageID #: 744-45).

Claimant asserts that in the ALJ's previous decision, he rejected Fiebelkorn's opinion "because he said there was nothing in the evidence to suggest that Ms. Cruz would likely be absent from work four or more days of work each month;" the Appeals Counsel found that "the ALJ failed to conduct a proper evaluation of the medical opinion" because he "did not consider Ms. Cruz's chronic anxiety with panic attacks when he evaluated Ms. Fiebelkorn's medical opinion;" and "the ALJ made the same legal error in the current 2022 unfavorable decision." (ECF No. 9 at 14-15). Claimant argues that the ALJ's cited evidence "merely established that Ms. Cruz was not having a panic attack on those 11 occasions when she saw her medical provider" and the "ALJ's assessment was not based on the record as a whole." (*Id.* at 15). She argues that Fiebelkorn's opinion was both supported by and consistent with the record. (*Id.* at 16).

The Commissioner responds that as part of his analysis finding Fiebelkorn's opinion unpersuasive, "the ALJ noted Plaintiff's subjective complaints, including those regarding panic attacks . . . but juxtaposed them with the predominately normal findings on examination." (ECF No. 13 at 12). The Commissioner argues that "the ALJ explicitly considered Plaintiff's complaints of anxiety and panic attacks when evaluating PA Fiebelkorn's opinion" and "reading the ALJ

decision as a whole and with common sense, the ALJ provided ample explanation for why he was not persuaded by those subjective complaints." (*Id.* at 13). The Commissioner asserts that "PA Fiebelkorn's opinion is the type of checkbox opinion that courts in the Sixth Circuit have found to be inherently unsupported" and "[m]oreover, the ALJ's rationale overall and his specific analysis of PA Fiebelkorn's opinion considered the totality of the evidence, including the records from both PA Fiebelkorn and other treating, examining, and reviewing medical sources." (*Id.* at 14).

Claimant replies that "the ALJ's rationale amounted to an irrelevant, selective analysis of the evidence and was a failure to consider the record as a whole." (ECF No. 14 at 2). She argues that "the ALJ cherry-picked select portions of the medical record to discredit Ms. Fiebelkorn's opinion." (*Id.* at 5). Claimant argues that the record supports Fiebelkorn's opinion that she would be absent from work four or more times a month. (*Id.* at 6).

The Court finds Claimant's argument that the ALJ made the same error concerning Fiebelkorn's opinion as in the 2019 decision meritless. In the previous decision, the ALJ indicated:

> The undersigned is less than persuaded by [Fiebelkorn's] opinion, as there is nothing in the evidence to suggest that the claimant would likely be absent from work 4 or more days of work each month. Specifically, the record shows that the claimant's symptoms lessened with medication, with the claimant herself stating that her depression was only occasional and mild in nature, lasting for a few minutes to an hour at the most.

(ECF No. 7 at PageID #: 56-57). In its remand order, the Appeals Council noted that the ALJ's evaluation "did not appear to contemplate the claimant's chronic anxiety with recurrent panic attacks, which the record suggest was significantly more symptomatic than her depressive disorder." (*Id.* at PageID #: 884). However, in the current decision, the ALJ specifically mentions Claimant's anxiety and panic attacks such that the Court cannot say that the ALJ's evaluation did not contemplate these impairments as in the 2019 decision. (*Id.* at PageID #: 744-45). Thus, while the ALJ still ultimately decided that nothing in the record supported Fiebelkorn's opinion that

15

Claimant would be absent four or more days each month, he did so only after considering her anxiety and depression.

Additionally, the ALJ considered the required factors in rejecting the opinion. The ALJ addressed supportability when he observed that "there is nothing in the evidence to suggest that the claimant would likely be absent from work 4 or more days of work each month." (ECF No. 7 at PageID #: 745). The ALJ's summary of the medical evidence noted that Claimant's panic attacks often decreased with treatment. (*Id.* at PageID #: 739; *see id.* at PageID #: 669 (only one "mild panic attack in the last week"); *id.* at PageID #: 679 (one 30-minute panic attack in a month); *id.* at PageID #: 689 (two 10-minutes panic attacks in three weeks)). And while the medical records document Claimant's panic attacks, Fiebelkorn's opinion does not cite to any of the records or explain why panic attacks would limit Claimant's attendance. (*See* ECF No. 7 at PageID #: 723-26). The Sixth Circuit has recognized that substantial evidence supports an ALJ's decision to give little weight to opinions when the authors "failed to provide any explanation of how the proposed limitations were required by test results, their observations of [the claimant], or other objective findings." *Heart v. Comm'r of Soc. Sec.*, No. 22-3282, 2022 WL 19334605, at *2 (6th Cir. Dec. 8, 2022) (citing *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566-67 (6th Cir. 2016); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)).

The ALJ also considered consistency when he summarized records noting that Claimant "was oriented to person, place, time and situation;" had intact reasoning ability and normal memory, attention, and concentration; and displayed either fair or good insight and judgment. (ECF No. 7 at PageID #: 745). The ALJ found that "[t]hese notes are inconsistent with the marked limitations assessed." (*Id.*). Substantial evidence supports this decision and the Court must defer to it, "even if there is substantial evidence that would have supported an opposite conclusion."

16

*Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).

Considering the decision as a whole, the Court finds that the ALJ complied with the regulations when rejecting Fiebelkorn's opinion.

### b.  Kimberly Cromer

After discussing Fiebelkorn's opinion, the ALJ considered Cromer's opinion:

> Kimberly Cromer, NP, completed a medical opinion regarding the mental ability to do work related activities. Claimant became a client at Charak on March 25, 2021 and became Nurse Cromer's client on June 1, 2021. This is a checklist opinion form. Nurse Cromer checked off – poor abilities in most categories of work activity, and checked off - fair in the remaining categories. Claimant would be absent four or more times a month. (Exhibit B14F). Nurse Cromer did not date this form, but it was faxed on December 20, 2021. This opinion is less persuasive because it is inconsistent with treating notes as notes above (Exhibit B18F).

(ECF No. 7 at PageID #: 745).

Claimant challenges the ALJ's treatment of Comer's opinion, arguing that "the fact that it was a checklist form did not excuse the ALJ from conducting a proper analysis of the Nurse's opinion consistent with the regulations." (ECF No. 9 at 16). She asserts that "the ALJ limited his analysis to only one medical exhibit out of 22 medical records" and "did not explain why he chose only [that exhibit] to support his determination or why he ignored the other 21 medical records when he evaluated the Nurse's opinion." (*Id.* at 16-17).

The Commissioner responds that "the unsupported checkbox format of the opinion is a legally sufficient basis for concluding that the opinion is not supported and, even if it was not, the ALJ did not limit his analysis to that one factor" because he "incorporated by reference his prior, uncontested analysis of the cumulative medical evidence." (ECF No. 13 at 15) (citing *Gallagher v. Berryhill*, No. 5:16-cv-01831, 2017 WL 2791106, at *9 (N.D. Ohio June 12, 2017)).

The Court agrees with the Commissioner. The ALJ properly considered the supportability factor when he noted that Cromer's opinion was set forth in a "checklist opinion form." (ECF No.

7 at PageID #: 745). Contrary to Claimant's arguments and as this Court has previously observed, "[c]ourts throughout the Sixth Circuit have concluded that check-box opinions are unsupported and a reason to discount a medical opinion." *Laney v. Comm'r of Soc. Sec.*, No. 5:21-CV-01290-CEH, 2022 WL 2176539, at *6 (N.D. Ohio June 16, 2022) (collecting cases). The ALJ also considered the consistency factor, finding Cromer's opinion was inconsistent with the record overall for the same reason as Fiebelkorn's opinion—that Cromer's finding of "poor abilities in most categories of work activity" was inconsistent with records noting that Claimant "was oriented to person, place, time and situation;" had intact reasoning ability and normal memory, attention, and concentration; and displayed either fair or good insight and judgment. (ECF No. 7 at PageID #: 745). To the extent Claimant argues that the ALJ failed to indicate why he only cited a single medical record, the Court does not find any error given that the cited record includes Cromer's treatment notes. (*See id.* at PageID #: 2716, 2748, 2754, 2759-60, 2777, 2790). Thus, it is clear to the Court that the ALJ rejected Cromer's opinion because he found it both unsupported by and inconsistent with Cromer's own notes and observations. Substantial evidence supports this decision and the Court must defer to it. *Wright*, 321 F.3d at 614.

### c.  State agency consultants

As to the State agency consultants, the ALJ stated:

> The undersigned is persuaded by the opinions of the State agency psychiatric medical consultants Irma Johnston, Psy.D., and Deryck Richardson, Ph.D. Both Dr. Johnston, on initial determination, and Dr. Richardson, on reconsideration, opined that the claimant had mild limitations in understanding, remembering or carrying out information, but moderate limitations in the other three areas of mental functioning (Exhibit B3A; B5A). The undersigned is persuaded by these opinions, as they are consistent with the medical evidence of record. Specifically, the evidence details ongoing issues with social anxiety, problems taking her medications as prescribed, and occasional panic attacks (Exhibit B6F; B10F).

(ECF No. 7 at PageID #:

Claimant argues that the ALJ's reliance on these opinions was misplaced because "their reviewing opinions were not based on the record as a whole, nor did they have the benefits of the treating sources medical opinions" such that they "did not accurately reflect the ongoing severity of Ms. Cruz's anxiety and panic attacks." (ECF No. 9 at 17).

The Commissioner responds that while the State agency consultants "did not review the entirety of the record, the ALJ considered their findings in the context of the evidence overall and Plaintiff has made no attempt to demonstrate to the Court why evidence admitted at the hearing level necessarily renders the prior administrative medical findings unpersuasive." (ECF No. 13 at 16). The Commissioner argues that "the ALJ decision as a whole adequately explains why additional limitations – as alleged by Plaintiff and espoused by PA Fiebelkorn and NP Cromer – were not adopted." (*Id.* at 17).

The Court agrees with the Commissioner that because the ALJ considered all the evidence in the record, he did not err by finding the State agency consultants' opinions persuasive. As this Court has previously recognized,

> "There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record." *Robinson v. Comm'r of Soc. Sec. Admin.*, No. 5:14-CV-291, 2015 WL 1119751, at *11 (N.D. Ohio Mar. 11, 2015). "The opinions need only be 'supported by evidence in the case record.'" *Id.* (quoting *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011)). Indeed, "it is not error for an ALJ to rely on medical opinions from physicians who have not reviewed the entire record so long as the ALJ considers the post-dated evidence in formulating her opinion." *Edwards v. Comm'r of Soc. Sec.*, No. 1:17 CV 925, 2018 WL 4206920, at *6 (N.D. Ohio Sept. 4. 2018) (citing *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (indicating that an ALJ's reliance upon state agency reviewing physicians' opinions that were outdated was not error where the ALJ considered the evidence developed post-dating those opinions)).

*Langford v. Comm'r of Soc. Sec.*, No. 1:22-CV-006565-CEH, 2023 WL 3058160, at *24 (N.D. Ohio Apr. 24, 2023).

The ALJ here provided a detailed summary of the evidence, including evidence dated after the State agency review. (*See* ECF No. 7 at PageID #: 738-43). He found that the opinions were "consistent with the medical evidence of record" because "the evidence details ongoing issues with social anxiety, problems taking her medications as prescribed, and occasional panic attacks." (*Id.* at PageID #: 745). Notably, in reaching this conclusion, the ALJ cited to an exhibit which included records from Claimant's treatment after the State agency review. (*Id.*). Thus, it is clear that the ALJ considered all of the record evidence such that he did not err in his analysis of the State agency opinions.

### 2. Substantial evidence supports the RFC.

Claimant next challenges the ALJ's RFC, arguing that it "failed to take into consideration her inability to sustain competitive employment eight hours a day, five days a week, ongoingly, due to the interruptions from her psychological based symptoms." (ECF No. 9 at 18). At step four, the ALJ determines a claimant's RFC and whether a claimant can do her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). An RFC is "the most you can still do despite your limitations." *Id.* at § 416.945(a)(1). The RFC is based on all the relevant evidence in the claimant's record. *Id.* A court reviewing an RFC "decide[s] only whether there was substantial evidence to support the ALJ's RFC determination." *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 406 (6th Cir. 2018). If there is substantial evidence, the court will "defer to that decision even in the face of substantial evidence supporting the opposite conclusion." *Id.*

In setting forth Claimant's RFC, the ALJ found Claimant

> can understand, remember, and carry out simple instructions in a routine work setting, can respond appropriately to supervisors, coworkers, and work situations if the tasks performed are goal-oriented, but not at a production rate pace, and the work does not require more than superficial interaction, meaning that it does not require negotiating with, instructing, persuading, or directing the work of others.

(ECF No. 7 at PageID # 735-36). The vocational expert testified that jobs existed in the national economy that a hypothetical person with Claimant's RFC could perform. (*Id.* at PageID #: 778-79). When the ALJ added additional limitations of being off task 20% of the time or being absent two or more times per month, the expert testified that no jobs would exist. (*Id.* at PageID #: 780).

Claimant argues that the "ALJ's failure to consider Ms. Cruz's panic attacks and her need for accommodations or assistance in performing her work assignments when he fashioned the RFC was reversible error." (ECF No. 9 at 18). Claimant asserts that in considering her mental impairments, "the ALJ was required to evaluate the highs and lows together" and "[b]y relying on intermittent symptoms or improvement, the ALJ focuses on the wrong question." (*Id.* at 19). Claimant argues that the ALJ "posed alternative hypothetical questions to the VE which included Ms. Cruz being off task 20% of the time and/or absent four or more times a month" but "did not explain his reasons for rejecting the other alternative hypothetical or the factual basis upon which they were based." (*Id.* at 21).

The Commissioner responds that Claimant's argument that the ALJ did not consider her panic attacks or need for accommodations "plainly misreads the decision" because the ALJ "evaluated statements Plaintiff made both at the hearing and during treatment regarding her symptoms and the limitations that allegedly resulted from her impairments." (ECF No. 13 at 18). The Commissioner argues that simply because "the ALJ was not persuaded by such subjective complaints is not a reasonable basis for remand." (*Id.*).

Claimant replies that "[t]he ALJ's failure to consider the entire record and his failure to explain his rationale for finding that Ms. Cruz could perform sustained work for 8 hours a day, 5 days a week, ongoingly, requires a remand." (ECF No. 14 at 9).

The Court disagrees with the Claimant's argument that the ALJ failed to consider her panic

attacks in crafting the RFC. The ALJ noted that Claimant had a history of panic disorder and recognized her complaints of panic attacks. (ECF No. 7 at PageID #: 736, 738). However, he found that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence or other evidence in the record." (*Id.* at PageID #: 736). As discussed above, the ALJ's summary of the medical evidence noted that Claimant's panic attacks often decreased with treatment. (*Id.* at PageID #: 739; *see id.* at PageID #: 669 (only one "mild panic attack in the last week"); *id.* at PageID #: 679 (one 30-minute panic attack in a month); *id.* at PageID #: 689 (two 10-minutes panic attacks in three weeks)). The ALJ also noted that Claimant "works part-time and attends school;" "reported meaningful activities, including working, going to classes and spending time with [her] boyfriend on the weekend" while receiving consistent treatment; and "reported it is difficult to find a job that pays well enough to stay with." (ECF No. 7 at PageID #: 743). Thus, it is clear to the Court that the ALJ considered Claimant's panic attacks when crafting the RFC but found that additional limitations were not warranted.

As to the ALJ's failure to include limitations for being off task or missing work, these limitations only appear in the opinions of Fiebelkorn and Cromer. Because the Court has already determined that the ALJ properly found these opinions unpersuasive, the ALJ was not required to include the opined limitations in the RFC. *See Gasiewski v. Comm'r of Soc. Sec.*, No. 4:22-CV-002194, 2023 WL 5673034, at *11 (N.D. Ohio Aug. 14, 2023) (collecting cases), *report & recommendation adopted*, 2023 WL 5671936 (N.D. Ohio Sept. 1, 2023).

Because the RFC was supported by substantial evidence, the Court must defer to the ALJ's decision.

## VI. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying Plaintiff benefits. Plaintiff's Complaint is DISMISSED.

Dated: January 5, 2024

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE